IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JEFFREY HANSEN,<br><br>                    **Plaintiff,**<br><br>v.<br><br>HARPER EXCAVATING, INC.;<br>REGENCE BLUECROSS<br>BLUESHIELD OF UTAH,<br><br>                    **Defendants.** | **MEMORANDUM DECISION AND<br>ORDER**<br><br>**Case No. 2:05CV940 DAK** |

This matter is before the court on (1) Plaintiff's Motion for Summary Judgment Against Harper Excavating, Inc. ("Harper"); (2) Plaintiff's Motion to Strike Second Affidavit of Stacy Henderson; (3) Plaintiff's Motion to Strike and for Rule 11 Sanctions; (4) Plaintiff's Motion for Leave to Amend Complaint; and (5) Defendant's Motion to Compel. A hearing on the first four listed motions was held on January 24, 2007, and the court granted Plaintiff's Motion for Leave to Amend at the hearing. Defendant's Motion to compel has been decided on the briefs.

At the January 24, 2007 hearing, Plaintiff Jeffrey Hansen ("Mr. Hansen") was represented by Elizabeth M. Peck. Defendant Harper was represented by Joseph C. Rust. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the motions under advisement, the court has further considered the law and

facts relating to these motions.  Now being fully advised, the court renders the following

Memorandum Decision and Order.

I.     **MR. HANSEN'S  MOTION FOR SUMMARY JUDGMENT AGAINST HARPER**

   **A.  Undisputed Facts**

   Mr. Hansen has brought various ERISA and COBRA claims against his former employer,

Harper.  Mr. Hansen was hired by Harper on or about November 24, 2003.   It is undisputed that

Harper was the Plan Administrator of the health insurance plan, provided by Blue Cross Blue

Shield ("BCBS"), which Harper provides to its employees (referred to hereafter as the "Plan").

During Mr. Hansen's orientation at Harper, Harper provided him with a form to sign titled,

"Harper Companies Insurance Benefit Disclosure & Acknowledgement [sic]."

   The Benefit Disclosure & Acknowledgment form, which Hansen signed on November

24, 2003, stated , "[a]ll full time regular employees are eligible for benefits beginning on the 1st

day of the month following 90 days of employment."  The relevant provisions of the Plan

documents relating to eligibility provide that an employee becomes eligible after he completes

his probationary period, which period is determined by Harper.  The Plan further provides that an

employee is entitled to initially enroll for coverage under the Plan within thirty (30) days of first

becoming eligible for benefits.[1]

---

   [1]  The Benefit Disclosure & Acknowledgment form that was signed by Hansen also stated
that "[y]ou must enroll within 30 days from your hire date or wait until the next open enrollment
period."  It is undisputed, however, that this was Harper's own internal policy, which was not
enforced.  The actual Plan document states that they must enroll within 30 days of becoming
eligible, which, in Harper's case, was purportedly after a 90-day probationary period.

Harper's Human Resources Director, John Grissetti, testified that employees of Harper Excavating are not eligible for benefits until after ninety days of employment and that he reads this provision to every new hire.

Once he became eligible on March 1, 2004, Mr. Hansen completed and submitted application forms to enroll in the health, dental, vision, and accidental death insurance plans offered by Harper.   Mr. Hansen's application for dental and vision benefits, dated March 9, 2004, was accepted.  Mr. Hansen also submitted an application for health benefits dated March 9, 2004.  After Mr. Hansen submitted his application for health insurance, Harper's employee who was in charge of benefits, Stacy Henderson ("Ms. Henderson"), provided Mr. Hansen with the group numbers of the policy for which he was signing up.

Ms. Henderson, however, treated Mr. Hansen's application as though Mr. Hansen was subject to only a 60-day waiting period.  Ms. Henderson listed the "Effective Date" of Hansen's health insurance application as February 1, 2004, and submitted the application to BCBS.

Beginning with the pay period ending March 6, 2004, Harper began making deductions from Mr. Hansen's paychecks for dental and health insurance premiums, for coverage retroactive to February 1, 2004.   Harper doubled Mr. Hansen's premiums in order to recoup premiums back to February 1, 2004.

Mr. Hansen's application for medical insurance, however, was subsequently denied. Harper's health insurance provider, BCBS, notified Harper that Mr. Hansen's March 9, 2004 enrollment was untimely.   According to the agreement between Harper and BCBS, employees were required to enroll with 30 days of becoming eligible, which was 60 days–not 90 days–after

employment.   According to BCBS, Mr. Hansen had enrolled after the deadline.   If Harper had

applied the 90-day policy to Mr. Hansen's application, the application would have been

considered timely. [2]   Because BCBS denied Mr. Hansen's application, he never received health

insurance benefits.

       During Mr. Hansen's employment with Harper, however, Harper did not notify Mr.

Hansen that his insurance application had been declined by BCBS.   In fact, Harper did not notify

Mr. Hansen that his insurance enrollment had been declined until June 2, 2004, almost three

months after BCBS declined coverage.

       Ms. Henderson testified that it was the employee's obligation to check up on insurance,

and that she did not have an obligation to let Mr. Hansen know in a timely manner that he was

not covered by Harper's health care benefits plan.   Also, despite the fact that Harper received

notice that Mr. Hansen's application for insurance benefits had been denied, Harper continued to

deduct monies from Mr. Hansen's paychecks as premiums for his health insurance throughout the

rest of his employment with the company.   Mr. Hansen terminated his employment with Harper

---

       [2]  Harper does not–and cannot–dispute that its Benefit Disclosure and Acknowledgment
Form stated–albeit inaccurately–that "employees are eligible for benefits beginning on the 1st day
of the month following 90 days of employment."
       Although not relevant to the court's determination of Harper's ERISA violation, it
appears from the submitted documents that Harper previously had a 90-day probationary period
for its employees, but, on January 7, 2004 (just 6 weeks after Mr. Hansen began his
employment), Ms. Henderson wrote to BCBS and requested that, "[e]ffective January 1, 2004 we
would like to change our Hire and Rehire Effective Dates as follows: Effective 1st of the month
following 60 days of hire: Harper Excavating, Inc."  Thus, it appears from the documents that
Harper had a 90-day probationary period when Plaintiff began his employment and
that–unknown to Plaintiff–Harper altered its agreement with BCBS during Plaintiff's
probationary period, changing the probationary period to sixty days.  In any event, there is no
evidence that Plaintiff was ever told anything other than that he was subject to a ninety-day
probationary period.

4

on or about April 26, 2004.

On or about June 4, 2004, more than five weeks after his termination, Henderson informed Mr. Hansen for the first time that he was not covered by Harper's health insurance plan. On that date, Harper sent Mr. Hansen a check in the amount of $279.91 as reimbursement of the insurance premiums deducted from his paychecks.

Since his termination, Mr. Hansen has been hospitalized several times.  Because he does not have health insurance, Mr. Hansen claims that he has been unable to obtain the medical treatment that his doctors have recommended.  Mr. Hansen argues that he currently suffers from significant medical problems, including back problems and glaucoma, and that these problems have been exacerbated by Harper's failure to enroll him in its health insurance plan.

In addition, even though Mr. Hansen signed up for and obtained  dental coverage, he claims that Harper never sent him a COBRA notification.  Rather, Harper mailed an "Employee Change Form" to Mr. Hansen's mailing address, and Mr. Hansen's mother wrote across the top of this form: "This application was given in place of a COBRA letter on 6/2/04."

On March 1, 2006, Mr. Hansen made a formal written request for Plan documents to the Plan Administrator, Harper, pursuant to 29 U.S.C. § 1132.   In letters dated March 3, 2006 and April 28, 2006, Harper's attorney responded that it was not required to produce the Plan documents.  Harper did not produce any plan documents to Mr. Hansen until after he filed a Motion to Amend Complaint on May 1, 2006, stating his intention to file an additional claim alleging an ERISA violation based upon Harper's refusal to produce the documents.

**B.  Discussion**

First, Mr. Hansen seeks summary judgment on his claim for breach of fiduciary duty

5

under ERISA.   A fiduciary under ERISA is charged with certain duties, including "a fiduciary duty to act 'solely in the interest of the participants and beneficiaries' for purposes of providing benefits and administering the plan." 29 U.S.C. §1104(a)(1)(A).   A fiduciary is required to conduct its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.*; 29 U.S.C. §1104(a)(1)(B).

One of the duties ERISA specifically requires of administrators is that they "give beneficiaries certain information about the plan." *See Varity Corp. v. Howe*, 516 U.S. 489, 502; 29 U.S.C. § §102, 104(b)(1), 105(a).   As an ERISA plan administrator, Harper had a fiduciary duty to act "solely in the interest of the participants and beneficiaries" for the purposes of providing benefits and administering the plan.  29 U.S.C. § 1104(a)(1)(A).   "'A fiduciary has a legal duty to disclose to the beneficiary . . . material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection.'"   *Horn v. Cendant Operations, Inc.*, 2003 WL 21513210 at * 6 (10th Cir.  July 3, 2003) (quoting *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc.*, 93 F.3d 1171, 1182 (3rd Cir 1996)).   Further, the Tenth Circuit has stated that "'[t]he duty to disclose material information is the core of a fiduciary's responsibility."  *Id.*

A fiduciary's misrepresentation or failure to disclose is material "'if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed  . . . decision.'"  *Id.*  (quoting *Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1015 (3rd Cir 1997)); *see also, Owen v. Regence BlueCross BlueShield of Utah*, 388 F. Supp. 2d 1335, 1338 (D. Utah

2005).   "'ERISA was enacted, in part, to ensure that employees receive sufficient information about their rights under employee benefit plans to make well-informed employment . . . decisions.'"   *Horn,*  2003 WL 21513210 at * 6  (quoting *Hart v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3rd Cir 2000)).   Without sufficient information, plan beneficiaries may not be alerted that they should inquire further.  *Id.*

Harper has acknowledged that it was the Plan Administrator during the time frame relevant to this lawsuit.  Thus, Harper is a fiduciary to its employees, including Mr. Hansen. Harper's duties as a fiduciary include providing material information to its employees regarding their eligibility for Plan benefits, educating them as to their enrollment requirements, arranging and managing the deduction of premium payments from its employees' wages, managing enrollment applications and claims submissions to BCBS, and providing other material notices and information to its employees relating to the Plan.

Pursuant to these duties, at Mr. Hansen's orientation, Harper provided him with the "Harper Companies Insurance Benefit Disclosure & Acknowledgement [sic]," which states that "all full time regular employees are eligible for benefits beginning on the 1$_{st}$ day of the month *following 90 days of employment*."  Mr. Hansen acknowledged this policy by signing the document on November 24, 2003.   This document and Harper's "Payroll & Philosophies" form are the only documents Mr. Hansen ever received that established the waiting period for eligibility for benefits.

Harper has offered no evidence that Mr. Hansen was ever told anything relating to a 60-day waiting period.   There can be no dispute that Harper's representation to Mr. Hansen that he was subject to a 90-day waiting period for benefits constitutes "material information" related to

7

the Plan.   If the 90-day period had been applied to his application, Hansen's eligibility would have begun March 1, 2004, and his application would have been timely.   Regardless of whether the 60-day or 90-day period was ultimately correct, it is clear that, in its fiduciary capacity as plan administrator, Harper provided Mr. Hansen with materially inaccurate information regarding his eligibility and enrollment requirements.

Further, Harper's breach of its fiduciary duties went beyond its failure to convey accurate eligibility and enrollment requirements to Mr. Hansen.   Harper provided him with group insurance numbers and began deducting premiums from his paychecks, leading Mr. Hansen to believe that he had insurance.  Once Mr. Hansen's application for benefits was declined by BCBS for untimeliness, Harper never informed Mr. Hansen of the denial while he was employed at Harper.   Yet, Harper continued to collect premium payments from Mr. Hansen's paychecks until his termination on April 28, 2006–almost two months after BCBS denied him coverage.

Based upon the undisputed facts, Mr. Hansen has demonstrated that there is no genuine issue of material of fact precluding summary judgment on regarding whether Harper breached many of its fiduciary duties that it owed to Mr. Hansen, thus causing damage to him, as he was denied necessary health insurance coverage as a result of Harper's conduct.

Mr. Hansen also claims that Defendant failed to provide Plan documents when requested by Plaintiff during this lawsuit.  Because there appears to have been some confusion surrounding which documents had been requested and because the court has found that Harper violated ERISA in other regards, the court declines to award a penalty for this alleged failure to provide the Plan documents.

Next, Mr. Hansen contends that Harper never informed him of his rights under COBRA regarding his dental/vision insurance.[3]  Harper apparently mailed an "Employee Change Form" to Mr. Hansen's mailing address.  Mr. Hansen's mother wrote across the top of this form: "This application was given in place of a COBRA letter on 6/2/04."   Harper claims that, while some technical aspects of the notice were not present, the form did in fact convey to Mr. Hansen his right to apply for continued benefit.    It is clear, however, that the Employee Change Form does not comply with all the COBRA requirements.

Harper also argues that there is no indication that Mr. Hansen was willing or able to pay the expense of continued dental/vision coverage.  That argument, however, has been rejected by the Tenth Circuit as impermissibly speculative.  *See Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1385 (10th Cir. 1997).  Thus, Harper's assertion is entirely irrelevant in analyzing whether Harper violated COBRA.

The court, in its discretion, may award Mr. Hansen statutory damages in the amount of up to $110 per day from the date that Harper violated the COBRA statute, which was approximately three years ago.   The court hereby awards $6,000 for Harper's violation of the COBRA requirements.

In sum, the court finds that Harper violated both ERISA and COBRA.  Mr. Hansen is entitled to damages, reasonable attorney's fees, and costs for Harper's breach of its fiduciary duties under ERISA.  Mr. Hansen's damages will be determined during a bench trial to be scheduled by Plaintiff.   In addition, Mr. Hansen is awarded $6,000 for Harper's COBRA

---

[3]  Mr. Hansen also contends that because he should have had health insurance, he should have also received COBRA notifications about his health insurance.  The court has already ruled that Harper breached its fiduciary duties under ERISA regarding Mr. Hansen's health insurance. The court declines to find that Harper violated COBRA by failing to notify Mr. Hansen of his rights regarding health insurance that he did not have.

violations.

## II.     PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF STACEY HENDERSON

Mr. Hansen has moved to strike the Second Affidavit of Stacey Henderson.   In her

Second Affidavit, Ms. Henderson sets forth several assertions regarding the statements and/or

beliefs of an account executive with BCBS, Ms. Florence Benavidez.   Such statements

constitute inadmissible hearsay and are hereby stricken from Ms. Henderson's Second Affidavit.

The court declines, however, to strike the entire affidavit.

## III.    PLAINTIFF'S MOTION TO STRIKE AND FOR SANCTIONS

Mr. Hansen has also moved to strike certain statements and affirmative defenses that

Harper has set forth in its Answer to Amended Complaint.   Mr. Hansen also seeks sanctions

under Rule 11 of the Federal Rules of Civil Procedure.

In its Answer, Harper has made several assertions regarding Mr. Hansen's alleged history

of drug abuse.   Mr. Hansen argues that these statements are prejudicial and wholly irrelevant to

his claims.  He also claims that they are factually unfounded and untrue.  Thus, Mr. Hansen

claims that Harper has violated Rule 11.

Harper relies heavily on the "after acquired evidence" doctrine to explain the relevance of

these assertions, arguing, for example, that had it known of Mr. Hansen's alleged drug use, it

never would have hired him, and it would not now be dealing with this lawsuit.  Thus, Harper

claims that Mr. Hansen's claims are unmeritorious because he never should have been hired.

Harper's allegations are entirely irrelevant to any ERISA or COBRA defense.   The court

is not aware of any authority in which the "after acquired evidence" doctrine has been used in

this way, and it defies logic to apply the doctrine in these circumstances.  While the court

declines to strike the allegations or award sanctions at this time, should Mr. Hansen prove that

10

such allegations are false, the court will award sanctions at a future date.  The court, however, cannot award sanctions unless and until Mr. Harper has proven that such allegations are false. The court cannot rule out the possibility that such allegations–if proven by Harper–may affect any potential damage award.

## IV.  MOTION TO COMPEL

Harper has moved to compel Mr. Hansen to answer certain interrogatories propounded by Harper.   It is not uncommon for plaintiffs not to have a final, concrete damages request until close to trial.  Mr. Hansen, however, is required to timely supplement his interrogatory response regarding his claimed damages, or he will be barred from pursuing such damages.  It is unclear why Harper seeks information about whether Mr. Hansen paid the bills or whether Mr. Hansen's parents paid the bills.  Absent a compelling reason from Harper as to the relevance of such information, the court will not require Mr. Hansen to distinguish between his payments and his parents' payments for his medical care.

Regarding Harper's interrogatories about Mr. Hansen's alleged drug use, the court directs Mr. Hansen to respond to such interrogatories, as the answers may affect his requested damages. The court emphasizes, however, that any such information about possible drug use is irrelevant to the determination of any ERISA or COBRA violations, which issues have already been decided by the court.   The only potential use of any such information will relate to damages. The court is not prepared to rule at this time on the precise impact of such information on any requested damages.  In addition, any documents filed with the court that contain information concerning any alleged drug use shall be filed under seal.  The court declines to award attorney's fees to either party in connection with Defendant's Motion to Compel.

11

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment Against Harper Excavating [docket # 42] is GRANTED; (2) Plaintiff's Motion to Strike Second Affidavit of Stacy Henderson [docket #55] is GRANTED in part and DENIED in part; (3) Plaintiff's Motion to Strike and for Rule 11 Sanctions [docket # 65] is DENIED; Defendant's Motion to Compel [docket # 46] is GRANTED in part and DENIED in part; and (5) as stated at the hearing, Plaintiff's Motion for Leave to Amend Complaint [docket # 39] is GRANTED, and Plaintiff is directed to file the Second Amended Complaint as soon as possible.

DATED this 7th day of May, 2007.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge